1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES EVANS,

11             Petitioner,              No. CIV S-06-0376 LKK GGH P

12        vs.

13   TOM CAREY, et al.,

14             Respondents.        FINDINGS AND RECOMMENDATIONS[1]

15   _____/

16             Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  In 1982 petitioner was convicted of kidnapping for

18   robbery, robbery and attempted murder and sentenced to life with the possibility of parole.

19   Petitioner challenges the 2004 decision by the Board of Prison Terms (BPT) finding him

20   unsuitable for parole on grounds that insufficient evidence supported the decision.

21             Pending before the court is respondent's motion to dismiss filed April 17, 2006.

22   For the following reasons, the court recommends that respondent's motion be denied.

23             Respondent first argues that the court lacks subject matter jurisdiction to consider

24   petitioner's claim alleging insufficient evidence because petitioner has no liberty interest in being

25   _____

26        [1] Petitioner has relied upon, and copied in part, previous versions of the undersigned's
     Findings regarding a liberty interest.

1

1    released on parole.  Respondents confuse the subject matter jurisdiction of the court with failure

2    to state a cognizable claim.  Clearly, the court has subject matter jurisdiction over petitioner's

3    habeas corpus claim pursuant to 28 U.S.C. § 2254.  Federal question jurisdiction exists if the

4    complaint (or petition) purports to state a claim under federal law regardless of the validity of the

5    claim.  Wheeldin v. Wheeler, 373 U.S. 647, 83 S. Ct. 1441, 1444 (1963).  Only if the stated

6    federal claim is so wholly insubstantial that even a preliminary review of the merits is not

7    required does the federal court not have jurisdiction.  Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773

8    (1946).  It is not every arguably failed claim that deprives the district court of jurisdiction.  Here,

9    petitioner properly invoked § 2254 for the basis of his habeas claim.  His contentions that he was

10   denied due process in the parole setting process are not so insubstantial so as to deprive the court

11   of jurisdiction.

12          Respondent next argues that there is no clearly established Supreme Court

13   authority holding that a inmates have a liberty interest in parole under California law.  28 U.S.C.

14   § 2254(d)(1) provides that an application for writ of habeas corpus shall not be granted unless

15   adjudication of the claim in state court resulted in a decision that was contrary to or an

16   unreasonable application of clearly established Supreme Court authority.

17          For the following reasons, the court finds that petitioner has a clearly established

18   liberty interest in parole.

19          Although due process does not require the existence of a parole scheme,

20   California has established one.  Not all of the myriad procedures of the parole setting system are

21   pertinent here.  The court sets forth that part of the statutory section that is pertinent:

22          (a) In the case of any prisoner sentenced pursuant to any provision
             of law, other than Chapter 4.5 (commencing with Section 1170) of
23           Title 7 of Part 2, the Board of Prison Terms shall meet with each
             inmate during the third year of incarceration for the purposes of
24           reviewing the inmate's file, making recommendations, and
             documenting activities and conduct pertinent to granting or
25           withholding postconviction credit.  One year prior to the inmate's
             minimum eligible parole release date a panel consisting of at least
26           two commissioners of the Board of Prison Terms shall again meet

                                                2

> with the inmate and shall normally set a parole release date as
> provided in Section 3041.5.  The panel shall consist solely of
> commissioners or deputy commissioners from the Board of
> Prison Terms.
>
> The release date shall be set in a manner that will provide uniform
> terms for offenses of similar gravity and magnitude in respect to
> their threat to the public, and that will comply with the sentencing
> rules that the Judicial Council may issue and any sentencing
> information relevant to the setting of parole release dates.  The
> board shall establish criteria for the setting of parole release dates
> and in doing so shall consider the number of victims of the crime
> for which the prisoner was sentenced and other factors in
> mitigation or aggravation of the crime.

Cal. Penal Code § 3041.

In compliance with the statutory mandate, the Board of Prison Terms issued regulations which guide it in finding prisoners convicted of life offenses with parole eligibility for parole setting.  Cal. Code Regs. tit. 15, § 2402 sets forth the criteria for determining whether an inmate is suitable for parole.  Section 2402(a) provides that regardless of the length of time served, a prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

Section 2402(c) sets forth the circumstances tending to show unsuitability.  The court lists those of significance here:

> (1) Commitment Offense.  The prisoner committed the offense in
> an especially heinous, atrocious or cruel manner.  The factors to be
> considered include:
> (A) Multiple victims were attacked, injured or killed in the same or separate
> incidents.
>
> (B) The offense was carried out in a dispassionate and calculated
> manner, such as an execution-style manner.
>
> *****
>
> (D) The offense was carried out in a manner which demonstrates an
> exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in
> relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

*****

*****

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Section 2402(d) sets forth the circumstances tending to indicate suitability:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to the victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for the Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome . . .

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

\\\\\

1    California's parole scheme gives rise to a cognizable liberty interest in release on

2 parole. Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Only one aspect of that liberty

3 interest is of pertinence here: "In the parole context, the requirements of due process are met if

4 'some evidence' supports the decision." Id. The evidence underlying the board's decision must

5 have some indicia of reliability. Id.

6    In Biggs, the Ninth Circuit indicated that a continued reliance on an unchanging

7 factor such as the circumstances of the offense could result in a due process violation. Biggs was

8 serving a sentence of twenty-five years to life following a 1985 first degree murder conviction.

9 In the case before the Ninth Circuit, Biggs challenged the 1999 decision by the BPT finding him

10 unsuitable for parole despite his record as a model prisoner. 334 F.3d at 913. While the Ninth

11 Circuit rejected several of the reasons given by the BPT for finding Biggs unsuitable, it upheld

12 three:  1) petitioner's commitment offense involved the murder of a witness; 2) the murder was

13 carried out in a manner exhibiting a callous disregard for the life and suffering of another; 3)

14 petitioner could benefit from therapy. 334 F.3d at 913.

15    The Ninth Circuit cautioned the BPT regarding its continued reliance on the

16 gravity of the offense and petitioner's conduct prior to the offense:

17           As in the present instance, the parole board's sole supportable
            reliance on the gravity of the offense and conduct prior to
18          imprisonment to justify denial of parole can be initially justified as
            fulfilling the requirements set forth by state law.  Over time,
19          however, should Biggs continue to demonstrate exemplary
            behavior and evidence of rehabilitation, denying him a parole date
20          simply because of the nature of his offense would raise serious
            questions involving his liberty interest.

21

22 334 F.3d at 916.

23    The Ninth Circuit stated that "[a] continued reliance in the future on an

24 unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

25 contrary to the rehabilitative goals espoused by the prison system and could result in a due

26 process violation." 334 F.3d at 917.

1    Biggs is in conformance with the stated goals of California's parole establishment

2    system—that is, the goal is not to release persons who will be a danger to the community if

3    released.  Clearly, when looking at the commitment offense in terms of this goal, one would

4    attempt to use it for its predictive value.  The more violent, thoughtless, and callous the crime,

5    the more likely it could be said that the perpetrator would exhibit those tendencies again.  One

6    who not only killed, but excessively violated society's norms is a person less likely to care about

7    those norms when released.  But, the purpose of prison, aside from punishment, is to determine

8    for parole eligibility purposes when, if ever, these presumptions have been confirmed or

9    rebutted.

10    The California Supreme Court, having once seemingly agreed with the Ninth

11    Circuit, see In re Rosenkrantz, 29 Cal. 4th 616, 683 (2002), stating that in order for the BPT to

12    put weight on the exceptional nature of the crime (murder), the murder had to be "particularly

13    egregious," has now defined that term as simply "that the violence or viciousness of the inmate's

14    crime must be more than *minimally necessary to convict him* of the offense for which he is

15    confined."  In re Dannenberg, 34 Cal. 4th 1061, 1095, 23 Cal. Rptr. 3d 417, 440 (2005).  Of

16    course, as the dissent in Dannenberg pointed out, this standard is completely unreviewable.  34

17    Cal. 4th at 1102, 23 Cal. Rptr. 3d at 446.  The minimal elements of the crime are simply that a

18    person dies at the hands of another with the perpetrator exhibiting the requisite intent.  *Any* fact

19    in addition to this could be one viewed as "more than minimally necessary to convict."  For

20    example, one BPT panel may believe that use of a knife per se causes undue suffering; another

21    may believe use of any weapon where death is not instantaneous, probably the vast majority of

22    murders, exhibits callousness.  A conclusion can easily be reached by those who want to claim

23    that the facts of *any* murder are such that they prove more than those facts minimally necessary

24    for a conviction.

25    There can be no doubt that Dannenberg gives carte blanche to the BPT to issue a

26    mere characterization of the crime to support a denial of parole.  For the due process issue, the

question is whether AEDPA insulates this authority from review in habeas corpus.  Clearly,

federal due process is not defined by all the intricacies of state law regardless of whether the state

law gives rise to the protectable liberty interest.

> Although state laws may in certain circumstances create a
> constitutionally protected entitlement to substantive liberty
> interests, see, e.g., Sandin v. Conner, 515 U.S. 472, 483-84, 115
> S.Ct. 2293, 132 L.Ed.2d 418 (1995); Tracy v. Salamack, 572 F.2d
> 393, 396 & n. 9 (2d Cir.1978) (per curiam), state statutes do not
> create federally protected due process entitlements to specific
> state-mandated procedures. "Elevating a state-mandated procedure
> to the status of a constitutionally protected liberty or property
> interest, would make process an end in itself rather than a
> requirement whose constitutional purpose is to protect a
> substantive interest in which the individual has a claim of
> entitlement." Sealed v. Sealed, 332 F.3d 51, 57 n. 5 (2d Cir.2003)
> (quoting Olim, 461 U.S. at 250-51, 103 S.Ct. 1741, and Doe v.
> Milwaukee County, 903 F.2d 499, 503 (7th Cir.1990).

Holcomb v. Lykens, 337 F.3d 217, 224 (2nd Cir. 2003).

All that federal law requires for parole hearing due process is that the inmate up

for parole consideration be given a hearing with minimal rights and that the decision be

supported by "some evidence."  Biggs, supra.  Because the federal due process in parole

suitability hearings arises from a liberty interest created by state law,[2] state courts are generally

free to define their law in connection with the liberty interests as the final arbiters of their state

law.  Thus, in general, if state courts desire to define their state's parole criteria in a restrictive

fashion, the liberty interest is characterized by those restrictive holdings.

However, state courts may not interpret their law in such an arbitrary manner that

the interpretation is nothing but an evasion of the federal due process requirements, minimal as

they may be.  "[W]e are bound by the state's construction [of state laws] except when it appears

that its interpretation is an obvious subterfuge to evade the consideration of a federal issue."

Peltier v. Wright, 15 F.3d 860, 862 (9th Cir.1994); see also Oxborrow v. Eikenberry, 877 F.2d

---

[2] Federal due process does not require that a state have a parole system.  Greenholtz v.
Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S. Ct. 2100, 2104 (1979).

1395, 1399 (9th Cir.1989) ("Our deference to the [state] Court is suspended only upon a finding that the court's interpretation [of state law] is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation.").  The question ultimately to be decided here is whether the <u>Dannenberg</u> interpretation is so unreviewable, i.e., the facts underlying *any* murder can stand as "some evidence" to deny parole suitability, that the federal standard of "some evidence" is, in essence, completely eviscerated.

The undersigned is mindful that a majority of justices on the California Supreme Court in <u>Dannenberg</u> (4-3 decision) implicitly answered the question in the affirmative, although federal due process and liberty interests were not at issue per se in that case.  Therefore, it would, and should, be rare indeed that a lower court federal judge should find the decision of a state supreme court to be an unreasonable application of clearly established Supreme Court authority.  The question goes so much further than whether the undersigned believes that the dissent had the better of the argument.  Even clear error is insufficient.  That having been said, the undersigned cannot find a justifiable reason to find that the determination was reasonable.

As it stands now, the law in California permits parole to be denied *solely* on the basis of the nature of the crime.  "The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole."  <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 682, 128 Cal. Rptr. 2d 1104 (2002).  However, the historical facts of the crime will never change, and all prisoners having been found to have committed a crime with facts "more than minimally necessary to convict," i.e., nearly everyone, can have their life with parole case effectively transmuted to life without parole—because the facts of the offense will never change.  Under present California law, the BPT does not set the sentence, and therefore due process does not permit the BPT to change the court imposed sentence either *de jure* or *de facto*.

But, one might argue, a later panel may ultimately assess the unchangeable facts of the case differently than a previous panel, or two, or three, etc.  This argument, however, gives no substance to due process notions.  The argument would expressly hinge due process on the

1    luck of the draw, that is, maybe (but doubtful) a panel will come along that will view the facts as

2    not more than minimally necessary to convict.  Compelling due process to hinge on such an

3    arbitrary factor is no due process at all.

4            One final argument could be made to support the <u>Dannenberg</u> standard.  The BPT

5    is not *compelled* to deny parole solely on the basis of the "aggravated" nature of the crime.  But

6    this argument does not cure the due process defect either.  Simply because some inmates may, at

7    essentially the sole discretion of the BPT, receive a parole eligibility finding despite the existence

8    of an unreviewable and standardless "nature of the crime" factor (and not many inmates

9    have)—does not mean that the factor is therefore constitutional when used to deny parole.  The

10   deficiency in the factor is in its standardless, meaningless application per se when used to deny

11   parole suitability.  Due process in a particular case is adjudged on an individual, not statistical,

12   basis.  In other words, a due process violation against one person is not answered by reference to

13   another person who suffered no ultimate harm as a result of the violation.

14           Thus, the undersigned must continue to follow <u>Biggs</u>.  Repeated application of the

15   severity of the crime factor will violate due process when the crime for which incarceration was

16   required grows more remote.  Although the Ninth Circuit in <u>Biggs</u> did not explicitly state when

17   reliance on an unchanging factor would violate due process, it makes sense that reliance on such

18   a factor becomes unconstitutional when the factor no longer has predictive value.  The court

19   makes this determination on a case by case basis.[3]

20           The undersigned must relate that a district judge of this court believes that the

21   California parole scheme for indeterminate sentences does not create a federal liberty interest.

22

23           [3]  The undersigned must follow <u>Biggs</u>, not simply because the decision makes sense, but
     because the undersigned is bound to follow it as well.  While it might be possible for the
24   undersigned to deviate from <u>Biggs</u> if a higher federal authority had repudiated the case holding
     directly or in principle, i.e., either the Ninth Circuit en banc, or the Supreme Court, the
25   undersigned does not have that ability to ignore it simply because the California Supreme Court
     has issued a decision seemingly contrary to one it issued a few years ago.  The Ninth Circuit must
26   inform its lower court judges whether it is willing to depart from <u>Biggs</u>.

1    Sass v. Cal. Board of Prison Terms, __ F. Supp. 2d __, 2005 WL 1406100 (E.D. Cal. 2005)

2    (Honorable Morrison England).  In Sass, Judge England found that no federal liberty interest was

3    created because the wording of the parole statute, Cal. Penal Code 3041(a) ("a panel *shall*

4    *normally* set a release date..) and § 3041(b) ("the panel...*shall set* a release date....") was

5    insufficiently mandatory.  Judge England relied heavily on In re Dannenberg, 34 Cal. 4th 1061,

6    1098, 23 Cal. Rptr. 3d 417, 443 (2005) which admittedly, and as previously set forth, vested

7    almost unlimited, unreviewable discretion within the BPT when it came to determining parole

8    eligibility.  However, even assuming that the "old" Supreme Court paradigm regarding creation

9    of a liberty interest (mandatory act and underlying factual predicates) remains the analytical

10   framework in which to judge the creation of right-to-parole liberty interests, see e.g., Board of

11   Pardons v. Allen, 482 U.S. 369, 378, 107 S. Ct. 2415, 2421(1987) (mandatory language in a

12   parole statute creates a "presumption of release" and gives rise to a liberty interest), California

13   law, both before and after Dannenberg finds that the California parole scheme for indeterminate

14   offenses does create a liberty interest.

15              In sum, the governing statute provides that the Board *must grant*
             *parole* unless it determines that public safety requires a lengthier
16           period of incarceration for the individual because of the gravity of
             the offense underlying the conviction. (Pen.Code, § 3041, subd.
17           (b).) And as set forth in the governing regulations, the Board *must*
             *set a parole date* for a prisoner unless it finds, in the exercise of its
18           judgment after considering the circumstances enumerated in
             section 2402 of the regulations, that the prisoner is unsuitable for
19           parole. (Cal.Code Regs., tit. 15, § 2401.) Accordingly, parole
             applicants in this state *have an expectation that they will be*
20           *granted parole* unless the Board finds, in the exercise of its
             discretion, that they are unsuitable for parole in light of the
21           circumstances specified by statute and by regulation.

22   In re Rosenkrantz,  29 Cal. 4th 616, 654, 128 Cal. Rptr. 2d 104, 138 (2002) (emphasis added).

23   It is difficult to conceive of words which mirror the requirements of the Allen mandatory-act-in

24   light-of-satisfied-factual-predicates paradigm more than the emphasized words of Rosenkrantz.

25   Indeed, Allen and Rosenkrantz use the same terminology, i.e. "presumption" of release and

26   "expectation" of release.  These are the words of liberty interest creation.  It is not material that

1    great discretion is vested within the administrative agency granting parole.  <u>Allen</u> <u>supra</u>.  <u>See</u> <u>also</u>

2    the post-<u>Dannenberg</u> case of <u>In re DeLuna</u>,126 Cal. App. 4th 585, 591, 24 Cal. Rptr. 3d 643, 647

3    (2005):

4            Penal Code section 3041, subdivision (b) requires the Board to "set
        a release date unless it determines that the gravity of the current

5            convicted offense or offenses, or the timing and gravity of current
        or past convicted offense or offenses, is such that consideration of

6            public safety requires a more lengthy period of incarceration for
        this individual, and that a parole date, therefore, cannot be fixed at

7            this meeting." *This statute creates a conditional liberty interest for*
        *a prospective parolee.* (Cf. <u>Rosenkrantz</u>, <u>supra</u>, 29 Cal.4th at p.

8            661, 128 Cal.Rptr.2d 104, 59 P.3d 174; <u>McQuillion v. Duncan</u> (9th
        Cir.2002) 306 F.3d 895, 901-902.) (emphasis added)[4]

9

10          The undersigned can only find that California law is in disarray on the subject of

11   liberty interest created by the California parole statutes.  <u>Dannenberg</u> did not overrule

12   <u>Rosenkrantz</u>, and implied overrulings are extremely disfavored.  <u>Scheiding v. Gen. Motors</u>, 22

13   Cal. 4th 471, 478, 93 Cal. Rptr. 2d 342, 346 (2000).  Indeed, California cases after <u>Dannenberg</u>

14   continue to find a liberty interest and cite <u>Rosenkrantz.</u>  Therefore, <u>Biggs</u> and <u>McQuillion</u> should

15   not, and cannot, be cast aside based on the ambiguities in California law unless the Ninth Circuit

16   so holds.

17          Accordingly, IT IS HEREBY RECOMMENDED that respondent's April 17,

18   2006, motion to dismiss be denied, and respondent be ordered to file an answer addressing the

19   merits of petitioner's claim challenging the sufficiency of the evidence at his 2004 suitability

20   hearing.

21          These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23   days after being served with these findings and recommendations, any party may file written

24   --------

25       [4] <u>Dannenberg</u> did find that California prisoners had no liberty interest in a *uniform* parole
date, 34 Cal. 4th at 1098 (n.18), 23 Cal. Rptr. 3d at 443 (citing <u>Rosenkrantz</u>); however, this is a
far cry from holding that the parole scheme as a whole does not create a conditional liberty

26   interest.

1   objections with the court and serve a copy on all parties.  Such a document should be captioned

2   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3   shall be served and filed within ten days after service of the objections.  The parties are advised

4   that failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: 7/5/06

7                                                                    /s/ Gregory G. Hollows

8                                                                    _____
                                                                     GREGORY G. HOLLOWS
                                                                     UNITED STATES MAGISTRATE JUDGE
9   ggh:kj
    evans376.mtd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26